**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 14-CR-45-LRR |
| vs. | ‖ | **ORDER** |
| GORDON LASLEY, JR., | ‖ | |
| Defendant. | ‖ | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . *2*

*III. ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    *A.  Defense Motions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
        *1.  Prior bad acts.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
            *a.  Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . *3*
            *b.  Applicable law..* . . . . . . . . . . . . . . . . . . . . . . . *5*
            *c.  Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *2.  Non-expert testimony pertaining to Defendant's
            mental health..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
            *a.  Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . *9*
            *b.  Applicable law and application..* . . . . . . . . . . . *10*
    *B.  Government Motion.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
        *1.  Replica machete.* . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
        *2.  Defendant's experts' reports as hearsay..* . . . . . . . . . . . . . *11*
        *3.  Defendant's experts' opinion as to Defendant's sanity.* . . . . *13*
        *4.  Defendant's experts' testimony containing Defendant's
            statements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*IV.  CONCLUSION..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## I. INTRODUCTION

The matters before the court are Defendant Gordon Lasley, Jr.'s "First Motion in Limine" ("First Defense Motion") (docket no. 34), the government's "Motion for a Pretrial Order Regarding the Admissibility of Evidence" ("Government Motion") (docket no. 38) and Defendant's "Second Motion in Limine" ("Second Defense Motion") (docket no. 53).

## II. RELEVANT PROCEDURAL HISTORY

On April 9, 2014, the grand jury returned an Indictment (docket no. 2) charging Defendant with two counts of first degree murder within the confines of the Sac and Fox Tribe of the Mississippi in Iowa Meskwaki Settlement in violation of 18 U.S.C. § 1111. On October 28, 2014, Defendant filed the First Defense Motion. On October 31, 2014, the government filed the Government Motion. On November 4, 2014, the government filed a Resistance to the First Defense Motion (docket no. 40). Also on November 4, 2014, Defendant filed a Resistance to the Government Motion (docket no. 41). On November 10, 2014, the government filed a Reply to the Resistance to the Government Motion ("Government Reply") (docket no. 49). On November 12, 2014, Defendant filed a Sur-Reply (docket no. 54). On November 12, 2014, Defendant filed the Second Defense Motion. On November 18, 2014, the government filed a Resistance to the Second Defense Motion (docket no. 65). On November 19, 2014, Defendant filed a Reply to the Resistance to the Second Defense Motion (docket no. 66). The Motions are fully submitted and ready for decision.

## III. ANALYSIS

### A. Defense Motions

In the First Defense Motion and the Second Defense Motion (collectively, "Defense Motions") Defendant moves for an order preventing the government from introducing evidence about Defendant's prior bad acts, including: "driving while intoxicated, minor

assaults, swearing at a police officer, and breaking a window." Brief in Support of the Second Defense Motion (docket no. 53-1) at 2.[1] Defendant also moves for an order preventing the government from calling "jail employees, nurses, and other non-mental-health professionals to offer opinions on [Defendant's] mental status at various times during his life, including the time following his incarceration." *Id.* The court will first address Defendant's arguments regarding his prior bad acts. The court will then turn to Defendant's argument about non-mental-health professional opinions regarding Defendant's mental status.

### 1. Prior bad acts

#### a. Parties' arguments

While Defendant does not specify Defendant's prior bad acts to which he objects, the government states that it may attempt to use evidence of the following: (1) Defendant was referred to juvenile authorities at around fourteen years of age, including the Wittenmyer Youth Center, the Keystone Treatment Center and the Eldora Boys Reformatory; (2) Penny Roberts will testify about a December 2006 incident in which Defendant broke windows at her home because of a dispute with her daughter; (3) Lowell Youngbear will testify about a February 2007 incident in which Defendant was a passenger in a car stopped for a traffic infraction and Defendant threatened a police officer and was arrested; (4) in August 2007, officers attempted to arrest Defendant for possession of marijuana and Defendant violently resisted arrest and threatened to kill police officers; and

---

[1] In the First Defense Motion, Defendant expressed particular concern about defense counsel having a conflict of interest if the government called former Tama County Police Officer Eric Holub to testify about a February 2007 traffic stop. The government represents that it "will not call [Officer Holub] so as to prevent a conflict of interest from arising, but intends to call the driver of the car in which [D]efendant was riding when this event took place." Government Resistance to the First Defense Motion at 1.

3

(5) in April 2013, Defendant assaulted Mark Marogil and his girlfriend at a bar, hitting Marogil in the face and causing permanent damage to his teeth.

In the Defense Motions, Defendant argues that testimony about these acts should be prohibited pursuant to Federal Rule of Evidence 404(b) because "[n]othing about this highly prejudicial evidence is relevant to establish 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" Brief in Support of the Second Defense Motion at 2 (quoting Fed. R. Evid. 404(b)). Defendant additionally argues that evidence of Defendant's prior acts is inadmissible under Federal Rule of Evidence 403 because the probative value of such evidence is substantially outweighed by a danger of unfair prejudice. *See* Reply to the Resistance to the Second Defense Motion at 3.

In its Resistance to the First Defense Motion, the government states that it "will introduce the evidence only in rebuttal to [D]efendant's insanity defense and not in the government's case-in-chief." Resistance to the First Defense Motion at 3; *see also* Resistance to the Second Defense Motion at 4 ("[T]he evidence will not be offered in the government's case-in-chief on the issue of Defendant's guilt, but, rather, to rebut Defendant's insanity claim."). The government argues that testimony about Defendant's prior bad acts is relevant to "show [D]efendant's history of failing to control his anger, threats against others, and violent outbursts [as] inconsistent with the claim that the murders resulted from a psychotic episode." Resistance to the First Defense Motion at 1-2. The government argues that such evidence is not improper pursuant to Federal Rule of Evidence 404(b) because it will not use the evidence to show Defendant's propensity to commit bad acts, but rather "to rebut the claim that [Defendant's] conduct was the result of insanity." *Id.* at 3.

### b. Applicable law

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible" unless proscribed by "the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id*. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Federal Rule of Evidence 404(b) provides that evidence of other crimes or wrongs is not admissible to show a defendant's propensity to commit crimes or wrongs; however, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "[Rule 404(b)] is a rule of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006).[2]

---

[2] The government argues that when prior bad act evidence "is offered in rebuttal of an insanity defense[,] its admissibility should not be governed by the strictures of Rule 404(b)." Resistance to the First Defense Motion at 6. The court disagrees. Rule 404(b) simply prevents a party from introducing the prior bad acts of a person to show the person's propensity to commit such bad acts. Thus, if the government's only reason to introduce such bad acts was to argue in its case in chief that Defendant is prone to violence and thus he likely murdered his parents, this evidence would be prohibited by Rule 404(b). This is so even if the government ostensibly introduced such evidence in its rebuttal to an

(continued…)

5

The Eighth Circuit Court of Appeals has adopted a four-factor test to determine the admissibility of Rule 404(b) evidence:

> To be admissible, Rule 404(b) evidence "must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value."

*Id.* (quoting *United States v. Kern*, 12 F.3d 122, 124-25 (8th Cir. 1993)). Whether such evidence is admissible is left to the discretion of the trial court, and the Eighth Circuit Court of Appeals will "reverse 'only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity' to engage in criminal misconduct." *Id.* (quoting *United States v. Brown*, 148 F.3d 1003, 1009 (8th Cir. 1998)).

### c. *Application*

The court finds that evidence of Defendant's prior bad acts is admissible. The court shall address each Rule 404(b) factor in turn.

Turning to the first factor in the Rule 404(b) analysis, the court finds that Defendant's prior acts that the government references are "relevant to a material issue raised at trial."[3] *Id.* (quoting *Kern*, 12 F.3d at 124). Specifically, Defendant's behavior during these incidents is relevant because Defendant intends to argue that Defendant's

---

[2](…continued)
insanity defense. However, as the Rule makes clear, such evidence "may be admissible for *another* purpose . . . ." Fed. R. Evid. 404(b)(2) (emphasis added). In the case of rebuttal to an insanity defense, if such other purpose is to show that the defendant was sane at the time of the alleged crime rather than propensity to behave in conformity with a particular character trait, the Rule does not necessarily prohibit such evidence.

[3] Because relevance is a component of the Rule 404(b) analysis and the court finds that the evidence is admissible pursuant to Rule 404(b), the court also finds that the proposed evidence is also relevant pursuant to Federal Rule of Evidence 402.

conduct resulted from a recent onset of delusional thinking. Evidence that Defendant has a history of anger control problems and has become suddenly violent in the past tends to rebut the claim that Defendant's mental health problems are of recent onset. *See, e.g.*, *United States v. Emery*, 682 F.2d 493, 498 (5th Cir. 1982) ("[W]e have encouraged trial judges to be liberal in their evidentiary rulings affecting proof of sanity. 'This is in keeping with the philosophy of letting in all facts which might be helpful to the jury in making the final determination of the criminal responsibility of the accused.'" (quoting *United States v. McRary*, 616 F.2d 181, 184 (5th Cir. 1980))). *But see State v. Naranjo*, 321 P.3d 398, 411-12 (Ariz. 2014) ("[T]he defendant's actions in the back of [a] patrol car, including his kicking the patrol car doors, had no relevance to any issue in this case. More troubling still is the State's use of the threatening, profane remarks [the defendant] made about the female police officer and his daughter. That evidence merely depicts [the defendant] as a bad person, an improper use of other act evidence, even when the defense is insanity.").

Turning to the second factor, the closeness in time and the similarity of the past act to the crime charged, the court finds that the time between Defendant's prior bad acts and the instant offense renders the events sufficiently close in time. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (stating that courts are "'reluctant' to uphold admission of evidence of prior acts occurring more than 13 years prior to the charged offense" (quoting *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005)); *see also id.* (upholding a district court's admission of prior bad acts when 18 years elapsed between the prior offense and the charged offense). *But see id.* at 1276-77 (Melloy, J., dissenting). While the prior bad acts here are not particularly similar to the crimes charged, the government seeks to introduce the prior bad acts evidence to rebut Defendant's claim that he was insane at the time of the crimes charged. To that end, the prior bad acts are similar

7

in kind to the insanity defense, because the prior bad acts and Defendant's insanity defense involve Defendant's purported violent behavior as well as Defendant's sanity.

The third factor, whether the government will present sufficient evidence to support a finding by a jury that the defendant committed the other acts, is more difficult to determine at this stage in the case. However, assuming that the government is able to offer competent proof that Defendant in fact behaved as the government contends he behaved during these alleged instances of prior bad acts—an issue that Defendant does not appear to contest—the court is satisfied that a jury could find that Defendant committed the acts.

Turning to the fourth and final factor, the court finds that any unfair prejudice of such evidence does not substantially outweigh its probative value. Given Defendant's insanity defense, the jury may properly consider his behavior to gauge Defendant's mental health.[4] Moreover, the parties do not appear to dispute that Defendant actually committed the murders—rather, the fighting issue appears to be whether Defendant should be held criminally responsible for them. Thus, the court is less concerned that evidence of Defendant's prior bad acts will lead a jury to convict Defendant of the murders based on Defendant's propensity to commit such acts—the very chain of reasoning prohibited by Rule 404(b). To the extent Defendant remains concerned about this possibility, he may request from the court a limiting instruction instructing the jury that it may consider Defendant's prior bad acts only as they bear on Defendant's sanity.

In light of the above-listed factors, the court shall deny the Defense Motions to the extent they seek to exclude evidence of Defendant's prior bad acts. Despite the court's ruling at this stage, the parties may ask the court to reconsider its ruling during trial as evidence is presented.

---

[4] Because unfair prejudice is a component of the Rule 404(b) analysis and the court finds that the probative value is not substantially outweighed by a danger of unfair prejudice pursuant to its Rule 404(b) analysis, such evidence is not inadmissible pursuant to Rule 403 for the same reasons articulated here.

### 2. *Non-expert testimony pertaining to Defendant's mental health*
#### a. *Parties' arguments*

As the government summarizes, the government intends to call: (1) eight of Defendant's family members to testify about Defendant's family's mental health history; (2) five college instructors who taught Defendant in the one-year period before the murders to testify about their interactions with Defendant and Defendant's interactions with other students; (3) some of Defendant's friends to testify about Defendant's behavior leading up to the murders; (4) a nurse and a doctor from the Meskwaki Tribal Health Center to testify about Defendant's time at the center for many years, from childhood to present; (5) two deputies from the Tama County Jail to testify about their observations following Defendant's arrest; (6) several psychiatric nurses and one psychologist to testify about what they saw and did after seeing Defendant after the murders; and (7) an individual who does not know Defendant well but posted a reference to sexually transmitted diseases on Facebook. Resistance to the Second Defense Motion at 8-11.

Defendant argues that "jail employees, nurses, and other non-mental-health professionals . . . lack sufficient 'scientific, technical, or other specialized knowledge' that would aid the jury in determining [Defendant's] mental status on February 5, 2014." Brief in Support of the Second Defense Motion at 2 (quoting Fed. R. Evid. 702(a)). Defendant argues that the above-listed testimony "would otherwise be inadmissible" and that its probative value does not substantially outweigh its prejudicial effect. Second Defense Motion ¶ 2; Fed. R. Evid. 703.

The government argues that the above-listed testimony is admissible because: it is "the type of information regularly considered by mental health professionals"; people will testify to their interactions with Defendant and Defendant's interactions with others, including that "they never saw him appear to talk to a person who was not present or otherwise hallucinate"; medical professionals will testify that they never observed any

indications that Defendant suffered from a mental disease or defect; and witnesses will testify about their observations of Defendant following arrest. Resistance to the Second Defense Motion at 8-11.

### b. *Applicable law and application*

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Consistent with Rule 703, non-mental-health professionals may testify about what they saw or heard from Defendant as it bears on his mental health at relevant periods. Non-mental-health professionals may not offer a diagnosis or characterize these actions or words as indicative of or consistent with any particular mental health diagnosis. To the extent Defendant believes that such testimony is otherwise inadmissible under Rule 703, he may object to the testimony at the appropriate time, and the court will then first determine whether the testimony is otherwise inadmissible and, if so, will then decide whether "[its] probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." *Id*. Accordingly, consistent with the foregoing, the court shall grant the Second Defense Motion in part and deny the Second Defense Motion in part.

### B. *Government Motion*

In the Government Motion, the government argues that: (1) a replica machete is admissible at trial; (2) Defendant's experts' reports are inadmissible hearsay; (3) Defendant's experts may not opine about whether Defendant is insane or whether

Defendant had "the ability to appreciate the nature and quality or wrongfulness of his acts"; and (4) Defendant may not introduce testimony containing Defendant's statements. Government Motion at 1-2.

### 1. *Replica machete*

The government intends to offer a machete into evidence at trial, but because of the weapon's inherent dangerousness, it "will be secured in a box pursuant to instructions by the United States Marshal." Brief in Support of the Government Motion (docket no. 38-1) at 2. To demonstrate to the jury how the machete was used, the government intends to use a wooden replica. Defendant "has no objection if the government wishes to use a replica of the machete at trial." Resistance to the Government Motion ¶ 1 (footnote omitted). Because Defendant does not object to the government's use of a replica machete, and because the use of replica evidence has been approved by the Eighth Circuit Court of Appeals, the court shall grant the Government Motion to the extent it seeks to introduce a replica machete into evidence. *See United States v. Parks*, 364 F.3d 902, 907 (8th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1101 (2005).

### 2. *Defendant's experts' reports as hearsay*

The government argues that "[w]ritten reports of expert witnesses are inadmissible hearsay." Brief in Support of the Government Motion at 4. Defendant argues that the written reports are admissible under the residual hearsay exception contained in Federal Rule of Evidence 807. *See* Brief in Support of the Resistance to the Government Motion (docket no. 41-1) at 2.

Hearsay "means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c) (internal emphasis omitted). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.

Federal Rule of Evidence 807 provides that:

> a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception . . . [if]: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a) (formatting omitted).

Defendant cites *Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*, 635 F. Supp. 2d 1106 (C.D. Cal. 2009) in support of his argument that the court should admit the hearsay contained in the experts' reports. *See* Brief in Support of the Resistance to the Government Motion at 3. In *Televisa*, an expert created a report, was deposed and then later became unavailable to testify at trial. *Id.* at 1107-09. The district court held that his expert report, which contained the expert's opinions, was admissible under Rule 807 in part because "many of the classic hearsay risks, such as faulty perception, faulty memory, and faulty narration [did] not seem to be of concern." *Id.* at 1109. This was so, the court reasoned, because the opposing party had a "prior opportunity to cross-examine [the expert] during his sworn deposition, there [were] sufficient guarantees of accuracy and truthfulness here, and the need to cross-examine [the expert] at trial regarding his credentials, methods, and the contents of the Report would probably be superfluous." *Id.* at 1110.

This case is easily distinguishable. First, neither party has presented evidence that Defendant's experts have already been deposed and subject to cross examination. However, most importantly, Defendant's experts are available and intend to testify at trial. Therefore, the reports are not "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts." Fed.

R. Evid. 807(a)(3). That is, the experts' testimony itself is more probative on the point for which such experts' reports are offered. The jury will have the opportunity to hear Defendant's experts' live testimony, and the government will have the opportunity to cross examine the experts in front of the jury. Because this testimony is admissible, the court finds no basis to allow the hearsay contained in the experts' reports to be admitted into evidence under Federal Rule of Evidence 807. Accordingly, the court shall grant the Government Motion to the extent it seeks to exclude experts' written reports containing hearsay.[5]

### 3. *Defendant's experts' opinion as to Defendant's sanity*

The government argues that Defendant's experts' opinions "that [D]efendant is insane and that he was unable to appreciate the nature and quality or wrongfulness of his acts . . . are inadmissible because they invade the jury's decision-making responsibility." Brief in Support of the Government Motion at 5.

Defendant agrees with the government and states that "[h]e will not ask his expert witnesses to render an opinion on the ultimate issue of fact, specifically whether as a result of his mental disease or defect he was unable to appreciate the nature and quality or the wrongfulness of his acts." Brief in Support of the Resistance to the Government Motion at 1.

Accordingly, the court shall grant the Government Motion to the extent it seeks to prevent Defendant's experts from testifying in a manner inconsistent with Federal Rule of Evidence 704(b).

---

[5] The court notes that, in his Sur-Reply, Defendant withdraws this argument and represents that "[h]e will not offer into evidence the written reports of his expert witnesses." Sur-Reply at 1.

### *4.  Defendant's experts' testimony containing Defendant's statements*

The government argues that during Defendant's experts' interviews of Defendant, "[D]efendant made self-serving statements to defense experts purporting to explain his conduct, actions, and statements prior to and during the murders . . . [and that] [t]hese statements are inadmissible hearsay." Brief in Support of the Government Motion at 8. The government argues that such statements are hearsay and that the hearsay exception contained in Federal Rule of Evidence 803(4) does not apply to Defendant's statements. The government states that "[i]t is apparent in reading these reports that, if allowed, [D]efendant's experts will act as mere mouthpieces for [D]efendant, giving his explanation for the murders without subjecting him to cross examination." Government Reply at 6.

Defendant, however, argues that his statements to experts are not hearsay at all because they will not be offered for the truth of the matter asserted. *See* Brief in Support of the Defense Resistance at 4-5; Fed. R. Evid. 801(c)(2) (requiring a statement to be "offer[ed] in evidence to prove the truth of the matter asserted in the statement" for the statement to constitute hearsay). Instead, Defendant argues, Defendant's statements are being "offered to establish that they have no basis in truth." Brief in Support of the Defense Resistance at 5.

At this stage in the proceedings, it is difficult for the court to determine which of Defendant's statements Defendant's experts will testify to. To the extent that Defendant's statements are offered for their truth, they are inadmissible as hearsay if offered by Defendant.[6] To the extent such statements are not offered for their truth, they are permitted as non-hearsay statements. Because it is unclear which statements will be presented at trial, and the purported reasons for the statements' admission, the court shall

---

[6] If the government wishes to use Defendant's statements, even for their truth, it may do so because Defendant is an opposing party and an opposing party's statements are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

reserve ruling on the Government Motion to the extent it seeks to prohibit Defendant's experts from testifying about Defendant's statements.[7]

## IV. CONCLUSION

In light of the foregoing, Defendant Gordon Lasley, Jr.'s "First Motion in Limine" (docket no. 34) is **DENIED**. Defendant's "Second Motion in Limine" (docket no. 53) is **GRANTED IN PART** and **DENIED IN PART**. The government's "Motion for a Pretrial Order Regarding the Admissibility of Evidence" (docket no. 38) is **GRANTED IN PART** and the court **RESERVES RULING IN PART**. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this order. If during the presentation of evidence a party believes that a prohibited subject has become relevant, the party may request an opportunity to argue relevance outside the presence of the jury. Moreover, the parties are free to ask the court to reconsider its ruling on the Rule 404(b) issue during trial.

**IT IS SO ORDERED.**

**DATED** this 2nd day of December, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[7] While not argued in the Motions, the court notes that even if it decides that Defendant's statements constitute hearsay, they may still be admissible pursuant to Federal Rule of Evidence 703 if an expert relied on them. That is, if the court determines that Defendant's statements are otherwise inadmissible hearsay, the court will go on to decide whether "[the statements'] probative value in helping the jury evaluate the [expert] opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.